UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO
Honorable Howard R. Tallman

In re:                                        )
                                              )
**DONALD EUGENE STEINKE,**                    ) Case No. 14-18283 HRT
                                              )
Debtor.                                       ) Chapter 7
                                              )

## ORDER ON MOTION TO AVOID LIEN

     This case comes before the Court on Debtor's *Corrected Motion to Avoid Judicial Lien Impairing Homestead Exemption* (docket #61) (the Motion). The Court conducted an evidentiary hearing on December 16, 2014, and heard the parties' arguments.

### I. FACTUAL BACKGROUND

     The Debtor filed this case on June 13, 2014. Debtor's spouse, Susan K. Steinke, did not join the Debtor in this bankruptcy filing. The Debtor and his non-debtor spouse own a home at 5007 Pole Cat Place, Elizabeth, Colorado (the "Property").

     The creditors in this matter, Denis and Kerri Kilgore (the "Kilgores"), obtained a judgment against Twin I Beam Steel and Construction, LLC, and the Debtor in the principal amount of $52,746.67 on October 8, 2010. By virtue of that judgment, the Kilgores hold a judgment lien against the Debtor's interest in the Property.

     The value of the Property was the focus of the evidence taken by the Court. The Debtor advocates an "as is" value of approximately $362,000.00 and the Kilgores advocate for a value of between $480,000.00 (as is) and $495,000.00 (after repairs).

     The Debtor and Mrs. Steinke are jointly liable on a first mortgage debt in the amount of $355,197.42 and the mortgage holder has a lien against the Property.

### II. DISCUSSION

     The Debtor filed the Motion seeking to avoid the Kilgores' judgment lien under 11 U.S.C. § 522(f), which permits a debtor to "avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under [§ 522(b)] . . . ." 11 U.S.C. § 522(f).

ORDER ON MOTION TO AVOID LIEN
Case No. 14-18283 HRT

A.  Property Value

    *1. The Appraisals*

The Court heard testimony of two qualified real estate appraisers. But their appraisals differ substantially. Kerry Dunn, the Debtor's appraiser, values the Property at $420,000.00 and Roger Caldwell, the Kilgores' appraiser, valued the Property at between $480,000.00 and $495,000.00. Both appraisers used the standard market comparison methodology of choosing comparable properties and then making adjustments to the sale (or listing) price of each comparable based on differences between the comparable property and the subject property.

The primary difference between the appraisers was in their selection of comparable properties. Mr. Dunn testified that he placed an emphasis on geographical proximity of the Property to each of the comparables he selected. His four comparables were located 4.11 miles, 2.2 miles, 2.84 miles, and 1.74 miles from the Property. Mr. Caldwell testified that he placed primary emphasis on physical similarity between the Property and his selected comparables. His comparables were located 9.87 miles, 4.16 miles, 0.78 miles, 5.56 miles, 0.94 miles, and 1.38 miles from the Property. He gave the greatest weight to the comparable property that was located the farthest from Debtor's Property.

A disadvantage of Mr. Dunn's approach is that his report was based on properties that were less similar to the Debtor's Property than Mr. Caldwell's comparables. That resulted in large gross adjustments to the sale prices of the comparables. Those adjustments ranged from 24% to 32%. By contrast, Mr. Caldwell's selected comparable properties had more similar physical characteristics to the Debtor's Property. His gross adjustments ranged only from 6.6% to 11.6%.

Apparently because the Debtor's home is larger than is typical for the area, one consequence of Mr. Dunn limiting his geographical range for comparable properties was that his comparables were all smaller homes. Mr. Dunn's appraisal shows Debtor's home as containing 3,552 square feet. He chose comparable homes with as little as 2,543 square feet and as much as 3,138 square feet. The median size of Mr. Dunn's chosen comparables was 2735.5 square feet. Mr. Caldwell's appraisal lists the Debtor's home as containing 3,404 square feet.[1] He chose comparables with a median size of 3354.5 square feet and with a range of between 2,582 square feet to 3,744 square feet. The median difference between the sizes of Mr. Dunn's comparables and his size calculation of the Debtor's home was 816.5 square feet as compared to a median difference of 219.5 square feet for Mr. Caldwell's choices.

---

[1] There was no evidence that explained the difference between the two appraiser's calculation of size of the Debtor's home.

ORDER ON MOTION TO AVOID LIEN
Case No. 14-18283 HRT

The Court is persuaded by the evidence that buyers for the smaller size homes are likely to have different characteristics than buyers for a home of around 3,500 square feet and that the use of comparables that are all smaller than the subject property is likely to skew the appraisal downward. Also, as a general matter, given the appraisal methodology of adding and subtracting from the sale price of a comparable to adjust for differences, a greater gross adjustment to the comparable property sale price is indicative of greater dissimilarity between the subject property and the comparable property. Mr. Dunn acknowledged that larger gross adjustments to the comparable sale price are less reliable. He also testified that physical proximity to the subject property is a factor of great importance. Mr. Caldwell expressed the opinion that the nature of the community where the Debtor's home is located makes that factor less important. It is a somewhat rural, less densely populated area, from which most residents commute into the city to their places of employment. His opinion is that a buyer that would be interested in that type of area is a buyer who places less emphasis on distances and that makes physical proximity a less important factor.

There was testimony as to other differences. The Debtor's Property is a wooded acreage with no mountain view. Where Mr. Dunn compared the Debtor's Property to a comparable with mountain views, he applied a $20,000.00 negative adjustment. By contrast, Mr. Caldwell chose no comparables with mountain views and, in two instances he applied positive $5,000.00 adjustments in favor of the Debtor's wooded Property compared with properties he described as having a "pastoral" view.

Also, of the six comparables that Mr. Caldwell relied on, he chose four completed sales and two active listings. Mr. Dunn used four comparables and all were completed sales.

The Court has considered the testimony of the experts. The Court finds both to be well qualified and experienced. On balance, the Court accepts the testimony of Mr. Caldwell with respect to his choice of comparable properties. The Debtor's Property is located near Elizabeth, Colorado, which is around 45 miles southeast of downtown Denver. The Court accepts Mr. Caldwell's testimony that comparable properties with the greatest physical similarities that result in lower gross price adjustments provide the more reliable comparisons for the type of location where the Property is situated. The Court also agrees with Mr. Caldwell's decision not to take mountain views into account. This is not a foothills location. The Court accepts Mr. Caldwell's testimony that the Debtor's wooded acreage in this particular location would be an item of stronger buyer interest than an open pastoral view that allows a view of the distant mountains.

Finally, the Court agrees that completed sale prices are more reliable indicators of the market than listing prices. However, Mr. Caldwell's analysis over the preceding twelve months showed that sale prices averaged about 99% of list prices in the area over the period. Moreover, neither appraiser used a mathematical average of the adjusted comparable prices. They both exercised their professional judgment to weight their comparables and derive their estimates of market value. In particular, Mr. Caldwell placed his greatest reliance on a property of very

ORDER ON MOTION TO AVOID LIEN
Case No. 14-18283 HRT

similar size to the Debtor's Property. The evidence satisfies the Court that Mr. Caldwell's inclusion of two active listings in the group of six comparable properties has not significantly affected the reliability of the appraisal. The Court will use the Caldwell appraisal as its starting point.

   *2. Water Damage*

The Property has suffered significant water damage. The Court heard testimony from a contractor, Clifford Joyner, concerning his inspection of the Property and his repair estimate. The repair estimate includes correction of the condition that allowed the water damage and repair of the resulting damage as well as other unrelated maintenance items. The Caldwell appraisal states a range of values. The higher $495,000.00 end of the range represents a value that assumes the water damage has been repaired and the lower end of the range represents an as-is value. Mr. Caldwell's as-is value necessarily takes into account the visible damage but can't account for damage inside the walls. Mr. Caldwell acknowledged that estimating damage costs lies outside of his area of expertise. Considering the evidence that is before the Court, the Court believes that it may most accurately value the Property by using the $495,000.00 value that assumes repairs have been made and discounting that figure by the cost of repairs working from Mr. Joyner's repair estimate.

The repair estimate from Joyner Construction amounts to a total of $58,400.00. Much of the estimate is speculative based upon the difficulty of accurately pinpointing the source of the water intrusion and the fact that Mr. Joyner did not remove drywall to determine precisely the damage inside the walls. The estimate is based upon correcting all of the likely sources of the water intrusion and upon Mr. Joyner's experience in repairing water damage and his good faith estimate of repairs that will be necessary once the damaged drywall is removed. Mr. Joyner's estimate is the only evidence of repair costs that is before the Court so it is necessarily the best evidence. The evidence does not allow the Court to pick and choose among the individual components of the various estimated line-item costs. The only adjustment the Court will make is to deduct the $18,300.00 cost of the deck demolition and replacement. There is no evidence that the deck condition is related to the water damage nor is there evidence that either appraisal assumed a deck replacement.

Starting with Mr. Caldwell's $495,000.00 value estimate that assumes water damage repairs and deducting the $40,100.00 ($58,400.00 – $18,300.00) estimate for the repair of the water damage results in a figure of $454,900.00 for the value of the Debtor's Property.

B.  Apportionment of the Homestead Exemption

Under Colorado law, the Debtor and his non-filing spouse are entitled to claim a homestead exemption in the Property of $60,000.00. The case law establishes that the Colorado homestead exemption statute does not create a personal right, but creates an *in rem* exemption

Page 4 of 10

ORDER ON MOTION TO AVOID LIEN
Case No. 14-18283 HRT

from execution for a property which meets the requirements of a Colorado homestead under COLO. REV. STAT. § 38-41-201. *Pruitt v. Wilson (In re Pruitt)*, 829 F.2d 1002, 1004 (10th Cir. 1987) ("[L]ooking to the Colorado law to find a definition of the homestead exemption, we find it has always been regarded as an exemption which attached to the realty itself and not to a debtor personally."); *In re Wallace's Estate*, 246 P.2d 894, 900 (Colo. 1952) (A Colorado homestead exemption "is more in the nature of a lien that has attached to the home property . . . ."); *see, also, In re Bryant*, 221 B.R. 262, 264 (Bankr. D. Colo. 1998); *In re Robinson*, 44 B.R. 292, 293-94 (D. Colo. 1984). Thus, under the structure of the Colorado homestead statute, the exemption attaches to the homestead property. The Colorado homestead exemption's "protection cannot be claimed by one joint owner to the exclusion of the remainder." *Pruitt*, 829 F.2d at 1005 (adopting opinion of the district court). Consequently, the Debtor is entitled to claim $30,000.00 of the homestead exemption applicable to the Property.

C. Application of 11 U.S.C. § 522(f)

Under § 522(f), a debtor may avoid the fixing of a judicial lien on the debtor's interest in property to the extent that the lien impairs the debtor's exemption in that property. 11 U.S.C. § 522(f).

> For the purposes of [§ 522(f)], a lien shall be considered to impair an exemption to the extent that the sum of–
> (i) the lien;
> (ii) all other liens on the property; and
> (iii) the amount of the exemption that the debtor could claim if there were no liens on the property;
> exceeds the value that the debtor's interest in the property would have in the absence of any liens.

11 U.S.C. § 522(f)(2)(A).

The parties did not argue the effects of the fact that the Debtor's spouse did not join in the bankruptcy filing but is a co-owner of the Property. It is an issue that significantly complicates application of the § 522(f)(2)(A) formula. In addition to the valuation issue, this matter presents the Court with the task of reconciling the statutory language in a way that avoids an absurd result so as to carry out the intent of Congress.

In the case of *In re Cozad*, 208 B.R. 495 (B.A.P. 10th Cir. 1997), the Bankruptcy Appellate Panel for the Tenth Circuit held that § 522(f)(2)(A) requires a court to determine exemption impairment by adding together the full amount of all liens against the property and the homestead exemption to which the debtor is entitled. The value of the debtor's interest in the property is then subtracted from that sum. *Id*. at 497-98. Usually, where only one spouse files for bankruptcy, the debtor's interest is one-half the value of the property.

Page 5 of 10

ORDER ON MOTION TO AVOID LIEN
Case No. 14-18283 HRT

In this case, under the *Cozad* analysis, the Court would add together the $52,746.67 judgment lien, the $355,197.42 mortgage lien, and Debtor's $30,000.00 homestead exemption. That total is $437,944.09. The Debtor's interest in the homestead Property is one-half of its value or $227,450.00. Under *Cozad*, the Court would find that the $437,944.09 total of the liens plus the homestead exemption exceeds the Debtor's $227,450.00 interest in the Property by $210,494.09. Under that analysis, the Debtor could avoid the Kilgores' judgment lien up to that amount.

In other words, under the *Cozad* analysis, all of the evidence the Court heard concerning valuation of the Debtor's homestead is meaningless. Even if the Court were to value the Property as high as $750,000.00 (Debtor's interest equal to $375,000.00), the Court would find the full amount of the Kilgores' lien to be avoidable.

It is undeniable that the *Cozad* analysis is faithful to the literal language of § 522(f)(2)(A). The statutory language refers specifically to the value of "the debtor's interest in the property." In the case of joint ownership, the value of that interest will be some fraction of the full value of the property. But where the statute refers to liens, it does not speak in terms of the portion of the liens applicable to the debtor's interest in the property; it simply speaks of the lien. *Cozad* reads that language as referring to the full value of the lien regardless of whether the lien encumbers only the debtor's interest in the property or it encumbers the interests of co-owners as well.

The formula in § 522(f)(2)(A) was added in 1994 to clarify the application of § 522(f). *See* Bankruptcy Reform Act of 1994, Pub.L. No. 103-394, § 303, 108 Stat. 4106, 4132 (1994). In the normal case, it serves its purpose well of providing the courts with a uniform formula to use in determining lien impairment under § 522(f). In a single owner case or a joint husband and wife case where there are no non-debtor co-owners and the co-owners' interests are equally encumbered by liens against the property, the § 522(f)(2)(A) formula allows a debtor to avoid that portion of a judgment lien that impairs the homestead exemption and allows the creditor to retain its judgment lien only against non-exempt equity if there is any. *See Nelson v. Scala*, 192 F.3d 32, 34 (1st Cir. 1999) ("[T]he evident purpose of the avoidance provision [is] to permit [a debtor] to keep free of judicial liens only his *exempt* property").

But, in cases where only a single joint owner of property files a bankruptcy petition or where liens against the property do not equally encumber all of the joint owners' interests, a mechanical application of the § 522(f)(2)(A) formula renders a distorted result. This case provides an example. After deduction of the $355,197.42 mortgage lien and the full $60,000.00 homestead exemption from the value of $454,900.00, the home would have $39,702.58 of non-exempt equity. Avoidance of the Kilgore lien only to the extent it impacts the Debtor's share of the homestead exemption would allow the Kilgores' judgment lien to remain attached to the Debtor's $19,851.29 share of that non-exempt equity. That result would be consistent with the

ORDER ON MOTION TO AVOID LIEN
Case No. 14-18283 HRT

intent of preserving the full amount of the Debtor's portion of the homestead exemption while allowing the judgment lien to attach only his share of the non-exempt equity.

As illustrated above, application of the *Cozad* analysis would avoid the judgment lien in its entirety. With nearly $20,000.00 as the Debtor's share of the non-exempt equity in the Property after avoidance of the Kilgore lien, the Debtor would retain a windfall of unencumbered non-exempt equity.

*Cozad* was decided in 1997, shortly after the 1994 amendments added § 522(f)(2)(A) to the Bankruptcy Code. In the intervening years, three circuit courts of appeal have rendered opinions that recognize the failings of a mechanical application of § 522(f)(2)(A)'s formula. *In re Miller*, 299 F.3d 183, 186 (3rd Cir. 2002) ("It is illogical to net the total outstanding secured debt balance attributable to both a debtor and his joint tenant against the debtor's one-half interest in the property alone . . . .") ; *In re Lehman*, 205 F.3d 1255, 1257 (11th Cir. 2000) ("[T]here is clear evidence that a literal interpretation would disserve the legislative intent behind [§ 522(f)]."); *Nelson v. Scala*, 192 F.3d 32, 34-35 (1st Cir. 1999) ("[M]echanically applied, the formula in section 522(f)(2)(A) perversely seems to call for avoidance of the Scala liens in full and to Scala's disadvantage. Courts are not required to follow literal language where it would produce an outcome at odds with the purpose of Congress and where the result stems merely from an unintended quirk in drafting.").

All three circuits have recognized the need to adjust the § 522(f)(2)(A) formula to insure that a lien is avoided only to the extent that it impairs a debtor's exemption but no more than that. *Miller*, 299 F.3d at 186 ("In our view, the correct approach is to view the debtor as owning one half of the property to which one half of the mortgage debt is thus attributable and therefore to regard "property" in subsection (ii) to mean the debtor's interest in the property and then to allocate the lien among the interests in the property proportionately."); *Lehman*, 205 F3d at 1257-58 ("[T]he [bankruptcy] court was simply substituting, in the statutory formula, the total value of the home . . . in place of Lehman's interest in the home in the absence of any liens . . . . The same outcome would also be produced by substituting the value of the . . . mortgage attributable to Lehman's share of the property . . ., in place of the value of the mortgage on the whole property . . . . There was no error in declining to follow a literal application of the language of § 522(f)(2)(A) which would produce an absurd result and would violate the Congressional intent."); *Nelson*, 192 F.3d at 35-36 ("The reason why the statutory formula does not quite 'work' in our case has to do with the asymmetry of obligations as between Robert Nelson and his wife . . . . As the bankruptcy and district courts proved in their respective opinions, it is possible to adjust for this asymmetry . . . to produce the partial avoidance result that we affirm.").

ORDER ON MOTION TO AVOID LIEN
Case No. 14-18283 HRT

    The Court will follow the lead of the First, Third and Eleventh Circuits.[2] It will make adjustment to the § 522(f)(2)(A) formula to insure that the full amount of the Debtor's homestead exemption is protected and that the Kilgore lien continues to attach to non-exempt equity as intended by the statute.

    The Court will determine lien impairment by valuing the Debtor's interest in the Property at one-half of the Property's value and allocating the liens proportionately. It will allocate half the mortgage lien against the Debtor's interest because that is a joint obligation. It will allocate the full judgment lien against the Debtor's interest because the judgment was taken against the Debtor but not against his spouse. Finally, as noted above, the homestead exemption is applicable to the whole of the property and cannot be claimed by a single tenant to the exclusion of other co-tenants. Consequently, only that portion of the homestead exemption applicable to the Debtor's interest will be used in the calculation.[3] The Court determines the amount of lien impairment as follows:

---

[2] This Court has followed the *Cozad* analysis in a prior case. *In re Benbow*, 496 B.R. 605, 614 (Bankr. D. Colo. 2013). The Court noted the substantial criticism that *Cozad* has received over the years but, after performing the alternative analysis, the Court found the creditor's lien would be avoided in its entirety under either calculation so that it was not necessary to formally adopt either analysis at that time. *Id*. at 614 n.3.

[3] If a court does not allocate the value of liens according to the co-owners' proportional interests but, at the same time, considers only the debtor's proportional share of the property value, it is comparing apples to oranges. The result, in the absence of a correct allocation, will be skewed in the debtor's favor because the encumbrances against the debtor's interest will be artificially inflated.

ORDER ON MOTION TO AVOID LIEN
Case No. 14-18283 HRT

|              |                                                                                          |
|-------------:|------------------------------------------------------------------------------------------|
| $52,746.67   | The amount of the Kilgore lien.[4]                                                       |
| + $177,598.71 | The portion of the first mortgage lien applicable to the Debtor's interest in the Property. |
| + $30,000.00 | The amount of the homestead exemption applicable to the Debtor's interest in the Property. |
| = **$260,345.38** | **Total of the liens applicable to the Debtor's interest in the Property plus his portion of the homestead exemption** |
| - $227,450.00 | Less the value of the Debtor's interest in the Property in the absence of any liens.    |
| = **$32,895.38** | Amount of lien impairment under § 522(f)(2)(A). The amount by which the Kilgore lien; the Debtor's share of other liens on the Property; and the Debtor's share of the homestead exemption exceeds the value that the Debtor's interest in the Property would have in the absence of any liens. |

After the amount of $32,895.38 is deducted from the value of the Kilgore lien, the amount of $19,851.29 remains enforceable against the Debtor's interest in the homestead Property. The very same figure resulted above where the Court subtracted the full $355,197.42 mortgage amount and the full $60,000.00 homestead exemption from the full $454,900.00 Property value to derive the $39,702.58 figure that corresponds to the amount of non-exempt equity shared by the Debtor and his non-debtor spouse. The Debtor's half of that non-exempt equity is $19,851.29. The end result corresponds to the Congressional intent to protect the full amount of a debtor's exemption while allowing a judgment lien to remain enforceable against non-exempt equity.

### III.  CONCLUSION

In accordance with the above discussion, it is

**ORDERED** that Debtor's *Corrected Motion to Avoid Judicial Lien Impairing Homestead Exemption* (docket #61) is GRANTED IN PART and DENIED IN PART. The Kilgore judgment lien, valued at $52,746.67 for the purposes of this proceeding, is avoided to

---

[4] The actual amount of the Kilgore lien includes interest from the date of the entry of judgment on October 8, 2010. The evidence before the Court does not include an interest calculation. The fact that the Court does not have evidence of the full amount of the Kilgore lien makes no difference to the outcome of the lien impairment calculation in this case. The Kilgores' judgment lien is avoided except for the amount that corresponds to the Debtor's share of non-exempt equity in the Property. Adding the additional interest to the judgment principal would only serve to increase the amount of the lien that is avoided, it would not affect the amount of the lien that remains enforceable under the facts of this case.

ORDER ON MOTION TO AVOID LIEN
Case No. 14-18283 HRT

the extent of $32,895.38 but remains enforceable, in the amount of $19,851.29, against the Debtor's interest in real property located at 5007 Pole Cat Place, Elizabeth, Colorado.

    Dated this __23rd__ day of December, 2014.

**BY THE COURT:**

*/s/ Howard Tallman*

Howard R. Tallman, Judge
United States Bankruptcy Court